IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

AT NOVEMBER TERM, 1856.

---

Den, ex dem. MARY W. SOUTHARD, *vs.* THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. I. S. conveyed to the E. and S. R. R. Co. certain lands, to be occupied by them for the sole and only use of a depot for passengers and freight, and other necessary buildings for the accommodation of said company, " and also a house for the temporary reception (other than a public house) for the accommodation, victualing, and lodging of passengers and others," with a proviso, that if used for any other purpose than those above designated, or if the grantees should use any other building within one mile of said premises for such purposes, or should use said premises for an inn or tavern, then said grantees should forfeit their estate therein. *Held*, that a transfer of the property by the grantees to another corporation under legislative sanction, and extending the road beyond the point of its *terminus* when the deed was given, did not violate the condition of the deed. *Held*, also, that the condition was not broken by selling refreshments and occasionally lodging persons in the depot buildings by a person in the employ of the company, neither was it violated by permitting persons to unload their freight at their own warehouses or stores within one mile of the premises.

2. When conditions tend to the forfeiture of an estate, or to defeat it, they are *stricti juris*, and should be construed strictly.

3. Previous to the passage of the act of March 14th, 1851, a contingent estate, or a right for a condition broken, was not devisable, and the condi-

tion of a deed could only be taken advantage of by a party to the deed, or by privies in right and representation, as the heirs of natural persons or the successors of artificial persons.

4. The supplement to the act concerning wills, approved March 12th, 1851, applies to all wills of persons dying after July 4th, 1850, but it merely prescribes the requisites for the execution of wills, and does not make anything devisable that could not be devised previously.

This was an action of ejectment, brought in this court by Mary W. Southard against the Central Railroad Company of New Jersey, to obtain possession of the premises occupied by the defendants for their depot, machine shop, railroad tracks, and other purposes, in the village of Somerville.

The plaintiff claimed as devisee of Isaac Southard, who in his lifetime had conveyed the property to the Elizabethtown and Somerville Railroad Company. Between the time of such conveyance and the death of Isaac Southard, the property became vested, under the sanction of the legislature, in the defendants.

In the deed from Isaac Southard are the following conditions :

" Provided, nevertheless, and it is hereby expressly covenanted and agreed, that the said parties of the second part are to use and occupy the said lots and premises hereby granted for the sole and only use of a depot, or other place for the receiving and discharging of .passengers, goods, wares, and merchandise, and for the · erecting all necessary buildings ·for the accommodation of *said company,* such as car and engine-houses, and stores or warehouses for the purpose of storing grain, goods, wares, and merchandise to be transported by *said company* over and upon *said railroad ;* and also a house for the temporary reception (other than a public house) for the accommodation, victualing, and lodging of passengers and others, and for no other use or purpose whatsoever. And it is hereby expressly understood and agreed, by and between the said party of the first part and the said parties

of the second part, that if at any time forever hereafter the said company shall cease to use and occupy the above-described lands and premises for the sole and only purpose of a depot or other place for the reception and discharge of passengers, produce, goods, wares, and merchandise, or shall establish, make, have, use, enjoy, or possess any other depot, or other place for the above-described purposes, within *one mile* of the said lots and premises hereby granted and conveyed, or shall at any time forever hereafter build or erect, or cause or permit to be builded or erected, by any other person or persons upon said premises, any public house, inn, or tavern, ware, store, or other house or houses, other than for storing of produce, grain, goods, wares, and merchandise, or any other house of any kind or use soever, other than may be necessary to and for the said company or parties of the second part for their *own and sole use and accommodation as aforesaid*, that then and in that case the right and title hereby conveyed shall cease, and the said parties of the second part shall forfeit all the right, title, and interest conveyed, &c., or intended to be conveyed hereby to them in the above-described land and premises, and the same shall revert to and be in the said party of the first part, their heirs and assigns, as if this conveyance had never been made and no title had been given, or intended to be given, to the said parties of the second part."

The plaintiff claimed upon the ground that these conditions had been violated, and the title to the property thereby forfeited.

The deed was made in October, 1841, and the road was then made and in operation to Somerville. Isaac Southard died in September, 1850, and by his will devised all the residue of his estate to his wife Mary, the plaintiff in this suit. Under this residuary clause of the will, the plaintiff claimed title to the property in question.

The case was tried at the Somerset Circuit, at September Term, 1855, before a jury; and on the trial the plain-

tiff insisted that the conditions of the deed had been violated in three several particulars.

1. By the extension of the road to Easton, and carrying passengers and freight across the land granted, the company having thereby made a place of transit, and not merely a depot.

2. By establishing a place of entertainment.

3. By discharging goods at other places within a mile of the premises.

The defendants insisted that the action could not be maintained, for the following reasons:

1. That the conditions of the deed had not been broken.

2. That the right to take advantage of the condition broken was limited to Isaac Southard and his heirs; that it was not such an interest as could be devised, and therefore his devisee could not maintain this action.

3. That the defendants were entitled to notice to quit.

The jury rendered a verdict for the plaintiff, and on the return of the *postea* to this court, a rule was obtained by the defendants to show cause why the verdict should not be set aside, and a new trial granted.

The case was argued at June Term, 1856, before the CHIEF JUSTICE, and Justices OGDEN, HAINES, and RYERSON, by *F. T. Frelinghuysen* and *J. P. Bradley*, for the rule, and *G. H. Brown* and *W. L. Dayton, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

The plaintiff claims title to the premises in question as the devisee of Isaac Southard, deceased. The defendants claim, by virtue of a deed executed by the said Isaac Southard, in his lifetime, to " The Elizabethtown and Somerville Railroad Company," all the property and rights of the said company having been vested, by legislative sanction, in the defendants. The title was conveyed by Southard to the railroad company, subject to certain

conditions. These conditions, it is insisted, have been broken, and the defendant's title to the land thereby forfeited. To enforce this forfeiture is the object of the present action.

Two questions are presented for consideration, viz., first, was there a forfeiture by a breach of the conditions of the grant? second, is the plaintiff in a position to enforce the forfeiture?

*First.* The condition of the grant, upon the breach of which the forfeiture is claimed to have been incurred, is as follows: " If at any time forever hereafter the said company shall cease to use and occupy the above-described lands and premises for the sole and only purpose of a depot, or other place for the reception and discharge of passengers, produce, goods, wares, and merchandise, or shall establish, make, have, use, enjoy, or possess any other depot or other place for the above-described purposes within one mile of the said lots and premises hereby granted and conveyed, or shall at any time forever hereafter build or erect, or cause or permit to be builded or erected, by any other person or persons, upon said premises, any public house, inn, or tavern, ware, store, or other house or houses, other than for storing of produce, grain, goods, wares, and merchandise, or any other house of any kind or use soever, other than may be necessary to and for the said company, or parties of the second part, for their *own and sole use* and *accommodation as aforesaid*, that then and in that case the right and title hereby conveyed shall cease, and the said parties of the second part shall forfeit all the right, title, and interest conveyed."

The design of this condition was obviously to benefit the other property of the grantor in the vicinity of the premises conveyed.

Three objects are apparent upon its face  First, to secure the location of the company's depot, or building for the reception and discharge of passengers and merchandise, upon the premises conveyed, and to centre the entire

business of the company in Somerville and its vicinity at that point; second, to restrict the use of the premises solely to the accommodation of the appropriate business of the company, to the exclusion of all others; third, to prevent the erection of any public house, inn, or tavern upon the premises.

It is not insisted, nor can it be, that the condition is violated by a transfer of the rights and property of the grantees, under legislative sanction, to another corporation. But it is insisted that the condition is violated, first by extending the railroad to a point beyond Somerville; whereas the design and effect of the condition is to make that point the *terminus* of the road. There is no such limitation expressed in the grant. No such restriction can fairly or necessarily be inferred from its terms. If such was the intention of the parties, it was the most important provision in the whole condition of the grant, and it is remarkable that no direct allusion should be made to it. It is reasonable to expect that so important a restriction would have been expressed in clear and unequivocal terms, and not left to conjecture or inference. It is said that, by extending the road, the company use the land conveyed for the purposes of transit; whereas, by the terms of the grant, they are restricted to use it for the sole and only purpose of a depot, &c. If the land conveyed had been off the main route of the road, there might be some semblance of force in the position. But, by the terms of the grant, it appears that the land conveyed lies upon each side of and adjoining the centre line of the main track of the road; that the road extended entirely across the tract conveyed to a public highway upon the west side of it, and that the company were authorized by the grantor to construct a turnout upon his land west of the highway. The railroad, it appears by the evidence, had been constructed prior to the date of the grant. The company, then, are authorized by the terms of the grant to construct their road, and to run their cars entirely

across the tract in question; in other words, to use it for the purpose of transit. And having crossed the premises with the main line of their road, and having the undoubted privilege of crossing the land with their cars, there is nothing in the grant, expressed or implied, that limits their progress or restricts the extension of their road to any particular point. It is said that, at the time of the grant the company had no authority to extend their road beyond Somerville, that by their charter the *terminus* was fixed at that point, and that this fact must have been within the contemplation of the parties. But it must also be presumed to have been within the contemplation of the parties that the legislature might at any time alter the *terminus* by an extension of the road; that it was the undoubted right of the company to apply for such extension, and that the exercise of that right, and the use by the company of their land for that purpose, could only be restrained or qualified by express and unequivocal terms. I am clear that such restriction or limitation is not within the terms of the deed and the contemplation of the parties.

It is further insisted that the estate is forfeited by permitting a house of entertainment to be kept upon the premises, and by discharging merchandise at other points than upon the premises. The condition of the deed is, that if the company shall establish or use any other depot or place for the reception and discharge of passengers and merchandise, or shall build or erect, or permit to be built or erected, any public house, inn or tavern upon the premises, the grantees shall forfeit all the right, title and interest conveyed."

The evidence in support of these grounds of forfeiture is, that the person who had charge of the depot had, by the permission or connivance of the company, kept an oyster stand, had sold liquor to passengers and others, and, in the course of five years, had lodged about twelve or fourteen persons. There was no proof that the company had erected any building for the purpose, or that

any inn or tavern had in fact been kept upon the premises. It was further in evidence, that merchants in the village, upon the line of the road, had been permitted, for their greater accommodation, to unload their merchandise and freight upon their own premises, without any benefit or advantage to the company. Acts like these surely do not come within the letter or the spirit of the condition. Giving to the instrument the broadest and most liberal construction in favor of the grantor, admitting the legality of the restriction in its widest extent, the forfeiture of the estate can never, by any sound rule of construction, be made to depend upon such grounds. It could never have been the design of the parties themselves to restrict the company from accommodating their customers, by permitting them to load or unload their freight at their own doors upon the line of the road, or to prevent an employé of the company from selling refreshments at the station-house. These acts do not constitute either the erection of a public house or the establishment of a depot for the reception and discharge of freight and passengers. That such acts were not within the contemplation of the grantor, is obvious from the fact that for years, and during the greater portion of the period while these alleged breaches of covenant were being committed, he was a director of the company. He resided in the immediate vicinity of the depot, and the acts were done with his knowledge and under his immediate observation.

It is no less the dictate of reason and justice, than of sound law, that courts should require the violation of a condition which involves a forfeiture to be clearly established. Conditions, when they tend to defeat estates, are *stricti juris*, and to be construed strictly. 1 *Shep. Touch.* 133, § 8 ; *Roll. Rep.* 70.

Giving to the terms of the deed a strict construction, there is no evidence in the cause to establish a forfeiture or to warrant a verdict for the plaintiff. The jury should

have been so instructed.    The verdict is against law and against evidence.

If, however, the evidence had clearly established a breach of the condition and a consequent forfeiture of the estate, the plaintiff could not have availed herself of the forfeiture. She claims, not as heir, but as devisee of the grantor. She is a privy in estate, and not a privy in blood. It is a rule of the common law, that none may take advantage of a condition in deed but parties and privies in right and representation, as the heirs of natural persons and the successors of politic persons; and that neither privies nor assignees in law, as lords by escheat; nor in deeds, as grantees of reversions; nor privies in estate, as he to whom the remainder is limited, shall take benefit of entry or re-entry by force of a condition. *Shep. Touch.* 149; *Co. Lit.* 214, *a; Lit.*, § 347; *Doct. and Student* 161, *ch.* 20; *Perkins*, § 830; 4 *Kent* 127; 2 *Cruise Dig., ch.* 2, § 49.

The act of March 14th, 1851, authorizing the transfer of estates in expectancy, has altered the rule of the common law, but it clearly cannot affect this case. That act authorizes the assignment of a right of entry for condition broken, or other contingent interest by will or deed executed after the passing of the act. Isaac Southard, the devisor under whom the lessor of the plaintiff claims, died in September, 1850, before the passage of the law. His will was executed on the 28th of September, 1849.

Nor is it perceived that the plaintiff's title can be in anywise aided by the supplement to the act concerning wills, approved 12th March, 1851. That act, it is true, by its terms, applies to all wills of persons dying after the 4th of July, 1850, and therefore includes the will under which the lessor of the plaintiff claims. But the design of that statute was to prescribe the requisites for the due execution of wills, not to enlarge the subject of devises, or to alter the mode of their operation. The legislature could not have intended, by that act, to make contingent

estates devisable, since, two days after, they passed an act for that express purpose. The true construction of the phrase "all rights of any kind," in the first section of the supplement to the act concerning wills, (*Nixon's Dig.*) 877, must be construed to mean "all rights of any kind which by law are devisable."

But admitting, for the sake of the argument, that the act does operate to make all contingent estates devisable, it cannot aid the plaintiff's case. The grantor, Isaac Southard, died, and his will took effect in September, 1850. At that time the contingent interest of the testator in the lands in question depending upon the breach of the condition was not devisable. It did not pass by the will. Immediately upon his death, it descended to and vested in his heirs-at-law. A subsequent act of the legislature could not divest the estate of the heir or vest it in the devisee. The act of 1851 concerning wills was made retrospective, in order to sustain the validity of any will executed under the act of 1850, which was repealed by the act of 1851. But it never could have been designed to enable a previously executed will to pass an estate which it could not pass at the death of the testator. If it was so designed, the act in that respect is clearly inoperative and unconstitutional. This consideration affords the strongest ground for limiting the operation of the act strictly to estates then devisable by law. There is no ground upon which the right of the lessor of the plaintiff to the premises can be sustained.

The verdict must be set aside, and a new trial granted.

CITED *in Cornelius* v. *Ivins*, 2 *Dutch.* 385; *McKelway* v. *Seymour*, 5 *Dutch.* 328, 332; *New Jersey Midland Railway Co.* v. *Van Syckle*, 8 *Vr.* 505; *Schulenberg* v. *Harriman*, 21 *Wall.* 63.